UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIC YOUNG, ADAM KURTZ, and DAVID CRYSTAL on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>IFINEX INC., BFXNA INC., BFXWW INC., TETHER HOLDINGS LIMITED, TETHER LIMITED, DIGFINEX INC., TETHER OPERATIONS LIMITED, TETHER INTERNATIONAL LIMITED, AND JOHN DOES 1-50,<br>    Defendants. | No. 20 Civ. 00169 (KPF)<br>ECF Case |
| DAVID LEIBOWITZ, BENJAMIN LEIBOWITZ, JASON LEIBOWITZ, AARON LEIBOWITZ, and PINCHAS GOLDSHTEIN,<br><br>    Plaintiffs,<br><br> v.<br><br>IFINEX INC., BFXNA INC., BFXWW INC., TETHER HOLDINGS LIMITED, TETHER OPERATIONS LIMITED, TETHER LIMITED, TETHER INTERNATIONAL LIMITED, DIGFINEX INC., PHILIP G. POTTER, GIANCARLO DEVASINI, LUDOVICUS JAN VAN DER VELDE, REGINALD FOWLER, CRYPTO CAPITAL CORP., and GLOBAL TRADE SOLUTIONS AG,<br>    Defendants. | No. 19 Civ. 09236 (KPF)<br>ECF Case |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO APPOINT KIRBY MCINERNEY LLP AND THE RADICE LAW FIRM
<u>AS INTERIM LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1
ARGUMENT ................................................................................................................... 3
THE KIRBY/RADICE TEAM ARE BEST POSITIONED TO REPRESENT THE INTERESTS OF THE CLASS ............................................................................................ 3
I. Rule 23(g)(3) Authorizes the Court to Appoint Interim Lead Counsel to Act on Behalf of the Class Before Class Certification ............................................................. 3
II. Appointing the Kirby/Radice Team as Interim Lead Counsel is in the Best Interests of the Class ........................................................................................................... 4
    A. Rule 23(g)(1)(A)(i): The Complaint filed by the Kirby/Radice Team Demonstrates the Intensive Research and Expert Analysis Done in Identifying and Investigating the Claims in this Case. .............................. 4
    B. Rule 23(g)(1)(A)(ii): The Kirby/Radice Team Possesses Extensive Experience Litigating Claims Similar to Those Alleged in the Complaint, Including Antitrust and Commodities Cases, RICO Claims, and Class Actions ............................................................................................. 6
    C. Rule 23(g)(1)(A)(iii): The Kirby/Radice Team Has the Requisite Knowledge of Antitrust and Commodities Cases, RICO Claims, and Class Actions ............................................................................................. 13
    D. Rule 23(g)(1)(A)(iv): The Kirby/Radice Team Will Commit More Than Ample Resources to Representing the Class ............................................ 13
III. Rule 23(g)(1)(B) Discretionary Factors Also Favor Appointing the Kirby/Radice Team as Interim Lead Counsel ............................................................................ 15
CONCLUSION ............................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**
*Buonasera v. The Honest Co., Inc.*,
   318 F.R.D. 17 (S.D.N.Y. 2016) .................................................................................................. 3
*In re Comverse Tech., Inc. Derivative Litig.*,
   No. 06 Civ. 1849, 2006 WL 3511375 (E.D.N.Y. Dec. 5, 2006) ................................................ 4
*In re Mun. Derivatives Antitrust Litig.*,
   252 F.R.D. 184 (S.D.N.Y. 2008). ............................................................................................ 3, 4
*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
   MDL No. 2109, No. 09 Civ. 7666, 2010 WL 1433316 (N.D. Ill. Apr. 7, 2010) ......................... 5

**Rules**
Fed. R. Civ. P. 23(g) ................................................................................................... 1, 3, 4, 15

**Other Authorities**
Manual for Complex Litigation (Fourth) § 21.11 (2004) ............................................................ 3

Plaintiffs[1] respectfully request that this Court appoint Kirby McInerney LLP ("Kirby" or "KM") and the Radice Law Firm ("Radice") (collectively, the "Kirby/Radice Team") as Interim Lead Counsel under the Federal Rules of Civil Procedure, Rule 23(g).

## INTRODUCTION

There are two Related Actions presently pending in this Court alleging claims against Defendants on behalf of a proposed class of Bitcoin traders and Bitcoin futures traders. As discussed more fully *infra*, Plaintiffs respectfully request that Kirby and Radice be appointed Interim Lead Counsel for the proposed class (the "Class") pursuant to Fed. R. Civ. P. 23(g).[2]

By way of background, the action filed by Kirby and Radice alleges that Defendants used their control of the cryptocurrency Tether to artificially inflate and manipulate the price of Bitcoin and related Bitcoin futures from October 1, 2014 through the present.[3] Plaintiffs assert that Defendants falsely represented that all Tether were backed one-to-one by actual U.S. dollar deposits, causing investors to wrongly believe that trades of Bitcoin for Tether at the prevailing market price reflected actual market demand. In fact, Defendants were using issuance and removal

---

[1] The "Related Actions" refer to: (1) *Leibowitz et al v. iFinex Inc. et al.*, No. 19 Civ. 9236 (S.D.N.Y.) (the "*Leibowitz* Action"); and (2) *Young et al., v. iFinex Inc. et al.*, 20 Civ. 169 (S.D.N.Y.) (the "*Young* Action"). On January 10, 2020, an additional action styled, *Faubus v. iFinex Inc.*, 20 Civ. 00211 (the "*Faubus* Action"), was referred to this Court as possibly related. All references to "Plaintiffs" are to Plaintiffs in the *Young* Action, namely Eric Young, Adam Kurtz, and David Crystal. All references to "Defendants" are to Defendants in the *Young* Action, namely, iFinex Inc., BFXNA Inc., BFXWW Inc., Tether Holdings Limited, Tether Limited, DigFinex Inc., Tether Operations Limited, Tether International Limited, and John Does 1-50. All exhibit references are to the Declaration of Karen M. Lerner, filed contemporaneously herewith. Unless otherwise noted, all references to "ECF No." are to the *Young* Action.

[2] The *Young* Complaint defines the proposed Class as "[a]ll persons, corporations, and other legal entities who transacted in Bitcoin or Bitcoin futures traded on the CME or Cboe between October 1, 2014 and Present ('Class Period'). Excluded from the Class are Defendants, officers, directors, or employees of any Defendant; any entity in which any Defendant has a controlling interest; any affiliate, legal representative, heir, assign, parent, subsidiary, or co-conspirator of any Defendant." ECF No. 1.

[3] *Young et al. v. iFinex Inc. et al.*, No. 19 Civ. 1902 (W.D. Wash.).

of Tether unlinked to actual U.S. dollar deposits to buy massive amounts of Bitcoin when prices were low (buying that Bitcoin with Tether that investors wrongly believed were valued equally to dollars) in order to raise market prices, either to inflate the value of their own holdings or to sell at the higher prices and cash out for actual dollars. As a result, Defendants were able to use Tether to manipulate the Bitcoin market to their own advantage at the expense of other Bitcoin traders and Bitcoin futures traders. Previously, the *Leibowitz* Action was filed in this Court and on January 10, 2020 the *Faubus* Action was referred as possibly related. No additional related cases have been filed to date, and the Related Actions remain in an early stage of litigation.

For the reasons set forth below, Kirby and Radice are best equipped to fairly and adequately represent the interests of the class in accordance with the requirements of Rule 23(g). Kirby and Radice already have invested significant time and resources on behalf of the Class. Plaintiffs' Complaint demonstrates extensive, independent and through investigation, well beyond the allegations in the only other complaint filed, the *Leibowitz* Complaint.[4] In particular, Plaintiffs' Complaint contains expert analyses and original statistical analyses that are not found in the *Leibowitz* Complaint. Further, Kirby and Radice possess extensive, specialized experience representing parties in data-intensive financial, commodities, and antitrust class actions. The members of the Kirby/Radice Team have successfully litigated some of the largest and most complex cases involving legal claims and technical issues similar to those alleged in the Complaint. In addition, Kirby and Radice possess more than ample resources to see this litigation through to a successful conclusion.

Accordingly, appointing Kirby and Radice as interim lead counsel will protect the interests

---

[4] *See* Complaint, *Leibowitz et al. v. iFinex Inc. et al.*, No. 19 Civ. 9236 (S.D.N.Y. Oct. 6, 2019), ECF No. 1 (hereinafter, the "*Leibowitz* Compl.").

of all Plaintiffs, promote the efficient management of this litigation, and serve judicial economy.

## ARGUMENT

### THE KIRBY/RADICE TEAM ARE BEST POSITIONED TO REPRESENT THE INTERESTS OF THE CLASS

**I.     Rule 23(g)(3) Authorizes the Court to Appoint Interim Lead Counsel to Act on Behalf of the Class Before Class Certification**

Federal Rule of Civil Procedure 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." It is standard practice for courts to appoint interim lead counsel to provide clarity to all parties involved in the litigation—the Court, Defendants, and Plaintiffs—about who has the authority to act on behalf of and bind the class. *See* Manual for Complex Litigation (Fourth) § 21.11 (2004) (explaining that the "designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.").

Rule 23 does not include any specific criteria regarding the appointment of interim lead counsel. Thus, courts typically consider the four factors in Rule 23(g)(1)(A) relevant to the selection of class counsel. *See Buonasera v. The Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016) (citing *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008). These factors include: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). None of these considerations are individually determinative; rather, they provide a framework under which the Court may analyze and determine whether counsel can fairly and adequately represent

the class. Further, the Court, in its discretion, may consider any other criteria it deems relevant. Fed. R. Civ. P. 23(g)(1)(B).

II. **Appointing the Kirby/Radice Team as Interim Lead Counsel is in the Best Interests of the Class**

The Kirby/Radice Team is best positioned to fairly and adequately represent the interests of the class as Interim Lead Counsel pursuant to Fed. R. Civ. P. 23(g)(2). The attached firm résumés of Kirby and Radice show that each firm has deep and strong litigation experience managing cases of this kind, and both have been directly involved in many of the largest and most significant recoveries on behalf of investors and consumers in recent years. *See* Exhibits A, B. In addition to their historical successes, Kirby and Radice are well-regarded, established law firms with the ability to commit substantial resources to this litigation on behalf of class members.

Considering the four factors set out in Fed. R. Civ. P. 23(g)(1)(A) in the context of this matter establishes that the interests of the putative Class would be best served if Kirby and Radice were appointed Interim Lead Counsel.

    A. **Rule 23(g)(1)(A)(i): The Complaint filed by the Kirby/Radice Team Demonstrates the Intensive Research and Expert Analysis Done in Identifying and Investigating the Claims in this Case.**

Plaintiffs' allegations demonstrate that Kirby and Radice thoroughly investigated Defendants' misconduct and developed the most comprehensive claims based on original statistical and expert analyses. *See In re Comverse Tech., Inc. Derivative Litig.*, No. 06 Civ. 1849, 2006 WL 3511375, at *4 (E.D.N.Y. Dec. 5, 2006) (affirming magistrate's appointment of lead counsel on grounds that their complaint contained a "superior factual backdrop"); *In re Mun. Derivatives*, 252 F.R.D. at 186 (considering "work done by counsel in identifying and investigating potential claims in this action, the Court finds that the work done by the Firms weighs in favor of their appointment as interim lead counsel").

4

Prior to filing Plaintiffs' Complaint, Kirby and Radice performed a substantial independent investigation of Defendants' conduct, including detailed statistical and trading analyses. This research included extensive input from Bitcoin and cryptocurrency experts in order to best investigate the market forces, cryptocurrency wallets, and order flows at play in this alleged manipulation. Plaintiffs' Complaint contains original findings demonstrating, *inter alia*, (i) the mean returns of Bitcoin prices prior to and after tether issuances, (ii) tether issuances and Bitcoin returns on the day preceding month-end, (iii) specific large trading flows resulting from newly issued tethers and their impact on Bitcoin prices, (iv) a mapping of the trading flow of newly issued tethers to U.S. exchanges and Defendants' targeting of U.S. exchanges, and (v) the correlation between Bitcoin prices across various cryptocurrency exchanges. *See Young* Compl. ¶¶ 106-117, 132-150, Figures 16-24, and Tables 1-3.

Plaintiffs' Complaint is further distinguished both by (1) the inclusion of statistical analyses demonstrating the lockstep relationship between the pricing of Bitcoin and Bitcoin futures, and by (2) showing potential manipulation of those prices *on specific dates* during the proposed Class Period. *See, e.g., Young* Compl. ¶¶ 136-138, 143-144, 170-177, 184-185, Tables 1-3, Figures 20-22, 28-31, 35-36. Plaintiffs' well-researched Complaint dramatically stands out from the other Related Action and demonstrates that Kirby and Radice have the requisite meticulous understanding of the claims in order to effectively prosecute this action. *See In re Plasma-Derivative Protein Therapies Antitrust Litig.*, MDL No. 2109, No. 09 Civ. 7666, 2010 WL 1433316, at *6 (N.D. Ill. Apr. 7, 2010) (counsel's "amended complaint is detailed and showcases its attorneys' efforts in prosecuting this matter, and the court therefore considered it favorably when evaluating the relative merits of the applicants.").

**B.     Rule 23(g)(1)(A)(ii): The Kirby/Radice Team Possesses Extensive Experience Litigating Claims Similar to Those Alleged in the Complaint, Including Antitrust and Commodities Cases, RICO Claims, and Class Actions**

**Kirby.**  The law firm of Kirby McInerney has been at the forefront of complex litigation on behalf of investors for over seventy years.  *See* Exhibit A (Kirby firm resume).  In particular, Kirby has decades of experience representing investors in litigation relating to the manipulation of physical commodities, commodity futures, and related derivative products.

Kirby's experience in sophisticated financial cases is remarkable.  For example, Kirby served as lead counsel in a securities class action lawsuit against Citigroup, which settled for approximately $590 million.  *See In re Citigroup Inc. Sec. Litig.*, No. 07 Civ. 9901 (S.D.N.Y. 2013) (Stein, J.).  A notable example of Kirby's securities cases includes representation of an investment fund that acted as lead plaintiff for a certified class of purchasers of Preferred Redeemable Increased Dividend Equity Securities in connection with Cendant Corporation's accounting fraud.  *See In re Cendant Corp. PRIDES Litig.*, No. 98 Civ. 2819 (D.N.J. 1999).  Kirby secured a $340 million settlement – an unprecedented 100 percent recovery for the class.  In addition, representing a bank as lead plaintiff, Kirby acted as co-lead counsel in connection with a securities action brought against Adelphia Communications Corporation, obtaining a $478 million settlement for the class.  *See In re Adelphia Commc'ns Secs.*, No. 04 Civ. 5759 (S.D.N.Y. 2006, 2011, 2013).  Kirby also represented the New York State Common Retirement Fund as lead plaintiff in *In re National City Corporation Securities, Derivative & ERISA Litigation*, No. 08 Civ. 70004 (N.D. Ohio 2012), a securities class action arising from National City's alleged misrepresentations regarding exposure to subprime mortgage related losses, and ultimately secured a $168 million settlement.

Kirby's premier experience in antitrust and commodities litigation over the past two decades is also noteworthy.  In commodities litigation, Kirby has been involved in some of the

6

most cutting-edge areas of futures manipulation cases, including a seminal case involving Sumitomo Corporation's manipulation of the copper market. *See In re Sumitomo Copper Litig.*, No. 96 Civ. 4584 (S.D.N.Y. 1999). As discussed below, Kirby has represented market makers and hedge funds in commodities manipulation cases involving crude oil, foreign exchange, silver, gold, propane and fixed income products. Kirby's experience in market manipulation and price fixing for both direct and indirect purchasers in cases brought under the Sherman Act and state law analogs spans the markets for gasoline, propane, cement, concrete, steel, potash, silver, gold, and even fixed income products.

Indeed, the attorneys from Kirby who will be litigating this action have served in leadership positions representing plaintiffs in numerous antitrust and Commodity Exchange Act actions alleging the manipulation of commodity prices, including:

- *Wacker v. JP Morgan Chase & Co*, No. 15 Civ. 994 (S.D.N.Y.) (representing individual silver futures traders alleging manipulation of silver futures spreads; achieved a landmark Second Circuit appellate decision establishing pleading standards for monopolization claims in futures markets);

- *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13 Civ. 789 (S.D.N.Y.) (serving as fiduciary for a putative class of FX futures and options traders; resulted in partial settlements to date of more than $2.3 billion);

- *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11 MD 2262 (S.D.N.Y.) (serving as court-appointed co-lead counsel for a class of Exchange-Based Plaintiffs alleging the fixing of prices of the LIBOR benchmark interest rate; achieving the first class-wide "icebreaker" settlement in the MDL; resulted in partial settlements to date of over $180 million, which combined, represents the largest recovery in a "futures-only" commodities class action litigation);

- *In re Commodity Exchange, Inc. Gold Futures and Options Trading Litigation*, No. 14 MD 2548 (S.D.N.Y.) (serving as class counsel in the benchmark antitrust litigation on behalf of a putative class of gold derivative traders, including futures and options on gold; resulted in partial settlements to date of $60 million);

- *In re Cattle Antitrust Litig.*, No. 19 Civ. 1222 (D. Minn.) (serving on the executive committee as class counsel in the antitrust litigation on behalf of putative classes of cattle producers and live cattle futures and options traders);

- *Sullivan v. Barclays PLC*, No. 13 Civ. 2811 (S.D.N.Y.) (serving as class counsel in the benchmark antitrust litigation on behalf of a putative class of investors who traded derivative products linked to Euribor, including futures and options contracts on the NYSE LIFFE exchange; resulted in partial settlements of more than $300 million); and

- *In re Crude Oil Commodity Futures Litigation*, No. 11 Civ. 3600 (S.D.N.Y.) (serving as class counsel on behalf of WTI crude oil futures purchasers in a market manipulation case; resulted in a settlement of $16.5 million).

David Kovel, the head of Kirby's antitrust and commodities litigation practice, is leading the firm's commitment in this matter and has significant experience representing both individual and institutional investors and classes of direct purchasers in antitrust matters. Prior to receiving his J.D./M.B.A. from Columbia University, Mr. Kovel was a commodities trader for a large financial firm. As a commodities trader, he took financial risk in futures and options markets and traded physical markets in the US, Europe, Asia, and Latin America and became a specialist in understanding market dynamics, especially in pricing matters.

In addition to Mr. Kovel, the Kirby team is comprised of Karen Lerner, Thomas Elrod, and Anthony Maneiro. Ms. Lerner is a seasoned trial attorney who has achieved significant success litigating matters involving financial fraud. Ms. Lerner also has substantial expertise in complex antitrust and commodities cases involving claims of market monopolization and manipulation, as well as representing direct purchasers in multidistrict litigation against drug manufacturers concerning alleged delayed market entry of generic versions of brand name pharmaceuticals. Ms. Lerner received her J.D. from the University of Pennsylvania Carey Law School. Mr. Elrod has substantial experience in antitrust and commodities cases, including through representing an exchange-based class in a complex case involving allegations that banks colluded to misreport and manipulate LIBOR. Mr. Elrod received his J.D. from Boston University School of Law. Likewise, Mr. Maneiro has significant experience in matters involving financial markets, including antitrust and commodities litigation involving allegations of manipulation of over-the-counter derivatives

and exchange-traded futures and options. Mr. Maneiro received his J.D. and L.L.M. in Banking and Financial Law from Boston University School of Law and holds a master's degree from the London School of Economics and Political Science.

**Radice.** The Radice Law Firm is experienced in complex antitrust class actions. The firm has had a significant role in many of the largest class action cases of recent years, and it has achieved many substantial recoveries for plaintiffs and classes. The Radice Law Firm's expertise will be a valuable asset to the proposed class. More information about the Radice Law Firm's qualifications is available in Exhibit B (Radice Law Firm resume) and at the firm's website at www.radicelawfirm.com.

The Radice Law Firm has been involved in multiple class actions alleging market manipulation in the financial industry, including *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13 Civ. 7789 (S.D.N.Y.) (case alleging that major banks colluded to manipulate foreign exchange rates); *In re Mexican Government Bonds Antitrust Litigation*, No. 18 Civ. 2830 (S.D.N.Y.) (case alleging that major banks colluded to rig bond auctions, inflate resale prices, and widen bid-ask spreads); *In re Treasury Securities Auction Antitrust Litigation*, No. 15-md-2673 (S.D.N.Y.) (case alleging market manipulation by major banks in the auction market for U.S. treasury securities); and *Anastasio, et al. v. Total Gas & Power North America, Inc.*, et al., No. 15 Civ. 9689 (S.D.N.Y.) (case alleging that Total Gas' traders made manipulative trades at thinly-traded regional hubs in order to move the prices of derivative instruments whose values were tied to the price at those hubs).

The Radice Law Firm has had a substantial role in numerous class actions that have resulted in substantial recoveries for the class, including *In re Foreign Exchange* ($2.3 billion in settlements for the class); *In re Loestrin FE Antitrust Litigation*, No. 13-md-2472 (D.R.I.) (direct purchaser

9

class to share in pending $300 million settlement); *In re Lidoderm Antitrust Litigation*, No. 14-md-2521 (N.D. Ca.) ($166 million settlement for direct purchasers in case alleging that Endo and Teikoku unlawfully paid Watson to delay the launch of a generic Lidoderm pain relief patch); *In re Celebrex Antitrust Litigation*, No. 14 Civ. 361 (E.D. Va.) ($94 million settlement in case alleging that Pfizer engaged in fraud before the Patent Office in securing patent protection for its blockbuster pain drug); *In re Dental Supplies Antitrust Litigation*, No. 16 Civ. 696 (E.D.N.Y.) ($80 million settlement for the class; filed first case and appointed liaison in case alleging nationwide margin-fixing conspiracy among distributors of dental supplies); and *In re Solodyn (minocycline hydrochloride) Antitrust Litigation*, No. 14-md-2503 (D. Mass.) ($74 million in settlements with four pharmaceutical companies on behalf of direct purchasers in case alleging reverse payments and sham litigation to delay generic entry).

John Radice, the founder and managing partner of the Radice Law Firm, would lead the firm's efforts in this action. Mr. Radice has been practicing complex antitrust litigation on behalf of plaintiffs for over a dozen years. He graduated from Princeton University, and prior to attending law school, he worked at a major investment bank as a bond trader, giving him a deep familiarity with complex trading and financial markets. He attended New York University School of Law, where he was a Hays Fellow. After law school, he clerked for Judge Edith Brown Clement in the United States Court of Appeals for the Fifth Circuit, and then worked for some of the largest plaintiffs' antitrust firms in the country. He has been recognized by Super Lawyers beginning in 2011, first as a "Rising Star" (an honor received by no more than 2.5% of lawyers in the state) and then as a "Super Lawyer."

Mr. Radice has served as lead or co-lead counsel in the following class actions: *Filannino-Restifo v. TD Bank, N.A.*, No. 16 Civ. 2374 (D.N.J.) (co-lead counsel in case alleging

undercounting by a bank's coin-counting machines; assisted in achieving a favorable settlement for the class that received final approval from the court); *Chepiga, et al. v. Conair Corp.*, No. 16-1090 (D.N.J.) (complaint against Conair Corporation alleging consumer fraud in its recall of chopping blades from its Cuisinart food processor products, was appointed lead counsel, and efficiently negotiated a favorable settlement for the class that received final approval from the court); and *RXDN, Inc. v. Novartis Pharms. Corp., Novartis, AG, and Novartis Corp.*, No. 16-12399 (D. Mass.) (lead counsel in antitrust class action alleging an anticompetitive scheme to delay generic competition for Gleevec, a drug used to treat chronic myeloid leukemia and other conditions).

Mr. Radice also served as part of the litigation and trial teams in the following other cases that resulted in substantial class recoveries: *United States ex rel. Piacentile v. Bristol-Myers Squibb Co.*, No. 05 Civ. 10196 (D. Mass.) ($515 million qui tam settlement related to unlawful promotion of Abilify); *In re Tricor Direct Purchaser Antitrust Litigation*, No. 02 Civ. 1512 (D. Del.) ($250 million settlement after the start of trial in case alleging delayed entry of generic versions of Tricor); and *In re Flonase Direct Purchaser Antitrust Litigation*, No. 08 Civ. 3149 (E.D. Pa.) ($150 million settlement on the eve of trial in case alleging sham citizen petitioning to delay generic entry).

At least two other Radice Law Firm attorneys will have a substantial role in this matter: April Lambert and Natasha Fernandez-Silber.

Ms. Lambert is an experienced litigation attorney who has had significant roles in many complex antitrust class actions, including the *Foreign Exchange*, *Loestrin,* and *Solodyn* cases mentioned above, in addition to many others including *Cung Le et al. v. Zuffa*, No. 15 Civ. 1045 (D. Nev.) (alleging that the UFC has depressed the wages of MMA fighters through

anticompetitive practices) and *In re Niaspan Antitrust Litigation*, No. 13-md-2460 (E.D. Pa.) (alleging delayed generic entry of drug due to reverse payment). She graduated *Phi Beta Kappa* from Johns Hopkins University, earned her J.D. from New York University School of Law, where she was a McKay Scholar (top 25% of the class) and was executive editor of the *NYU Journal of Legislation and Public Policy*, and earned a masters in library and information science from the University of Illinois. As a graduate student, Ms. Lambert researched cryptocurrencies and the sociopolitical aspects of their use, and so has a deep understanding of the subject matter herein.

Ms. Fernandez-Silber is also an experienced litigation attorney who has taken an active role in many cases, including three class actions against Burger King, H&R Block, and Papa John's on behalf of workers from those companies' franchises who are challenging no-poach provisions in those companies' franchise agreements that prevent franchises from hiring workers from other franchises in the chain, alleging that practice has depressed wages, and *In re Intuniv Antitrust Litigation*, No. 16 Civ. 12653 (D. Mass.) (alleging delayed generic entry). Ms. Fernandez-Silber has a B.A. and M.A. from Yale University, and earned her J.D. from New York University School of Law, where she was a member of the Law Review. She clerked for the Honorable Ann Claire Williams (ret.) of the Seventh Circuit Court of Appeals, and then worked as a litigator handling restructuring and finance cases for a number of years before joining the Radice Law Firm.

Radice also includes six other highly capable attorneys that could assist with this matter. For their biographies and experience, please see our website at www.radicelawfirm.com. *See also* Exhibit B (Radice firm resume).

The breadth and depth of experience that the Kirby/Radice Team brings to this litigation firmly supports the appointment of the Kirby and Radice firms as Interim Lead Counsel.

### C. Rule 23(g)(1)(A)(iii): The Kirby/Radice Team Has the Requisite Knowledge of Antitrust and Commodities Cases, RICO Claims, and Class Actions

As a result of their significant specialized litigation experience, the members of the Kirby/Radice Team who will be litigating this matter have developed extensive knowledge of the subjects relevant to this controversy, particularly regarding financial markets in antitrust, market manipulation, RICO, and class action litigation. Accordingly, the Kirby/Radice Team respectfully submits that its knowledge of the law applicable to the claims and defenses in this litigation is reflected in the successful results they have obtained prosecuting other complex commodity, RICO, market manipulation, and antitrust cases, including class actions. *See* Section II.B, *supra*.

### D. Rule 23(g)(1)(A)(iv): The Kirby/Radice Team Will Commit More Than Ample Resources to Representing the Class

Kirby and Radice are experienced class action litigation firms that have advanced millions of dollars on behalf of the classes they have represented in the past. Here, the firms are prepared to advance similar substantial sums in the prosecution of this case.

**Kirby.** Kirby has the demonstrated financial, professional, investigative, and technological resources required to prosecute the claims in this matter. In connection with the firm's prior litigation successes, Kirby has expended millions of dollars for experts and consultants, the undertaking of international discovery, the use of advanced software systems for analyzing electronic documents, and the commitment of numerous investigative and attorney professionals needed to advance complex claims and adequately represent plaintiffs against highly qualified defense counsel.

For example, in *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11-md-2262 (S.D.N.Y), Kirby serves as court-appointed co-liaison counsel for all class actions in the multi-district litigation and co-lead counsel for the exchange-based class alleging price fixing of a benchmark interest rate. In that matter, Kirby has obtained partial settlements of $180 million,

which combined, represents the largest recovery in a "futures-only" commodities class action litigation. This victory has required years of concerted effort relating to discovery and negotiation with various defendants. Kirby is well prepared to commit similar resources in this litigation. Kirby has successfully managed many complex litigations like this case.

**Radice**. The success that Mr. Radice and the Radice Law Firm have had in prosecuting complex class actions, especially in the realm of financial class action litigation like the case pending here, attest to their willingness to commit the financial and personnel resources necessary to prosecute this action. The firm's resources are not merely financial, as it also has the personnel and expertise necessary to pursue a case of this magnitude as co-lead counsel and to achieve a positive outcome for the class.

The Radice Law Firm has a strong team assigned to prosecute this case, with attorneys experienced and skilled in cases of this nature. This legal team has substantial experience not only with the traditional duties of class counsel, but also with the tasks unique to complex litigation in the antitrust and market manipulation fields, including working with investigators and forensic accountants, supervising lawyers analyzing discovery documents, and finding and engaging and working with highly-qualified expert witnesses and consultants. The Radice Law Firm team is used to working on cases of this type and magnitude, and it knows how to coordinate seamlessly with co-counsel (and when appropriate, counsel for Defendants) on the major challenges ahead.

If approved by the Court as interim lead counsel, Mr. Radice and the Radice Law Firm will commit the necessary time and resources to pursue the matter to its conclusion, will coordinate and cooperate with co-counsel to prosecute the case efficiently, effectively, and in a manner that minimizes costs, and will at all times meet their obligations owed to the proposed class and this Court.

**III.     Rule 23(g)(1)(B) Discretionary Factors Also Favor Appointing the Kirby/Radice Team as Interim Lead Counsel**

Rule 23(g)(1)(B) states that courts "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Several additional factors further support appointing the Kirby/Radice Team as Interim Lead Counsel.

The Kirby and Radice firms have extensive experience litigating complex cases involving commodity, RICO, and antitrust claims and are currently responsible for leading some of the most cutting-edge hybrid antitrust/commodity class actions. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262, No. 11 Civ. 2613 (NRB) (S.D.N.Y.) (Kirby appointed interim co-lead counsel for class of exchange-based derivatives traders and co-liaison counsel for plaintiffs); *Wacker v. JP Morgan Chase & Co*, No. 15 Civ. 994 (S.D.N.Y.) (Kirby serving as counsel for individual silver futures traders); *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-00789 (S.D.N.Y.) (Kirby serving as fiduciary for a putative class of FX futures and options traders; Radice firm had an active role throughout); *In re Commodity Exchange, Inc. Gold Futures and Options Trading Litigation*, No. 14-md-2548 (S.D.N.Y.) (Kirby serving as class counsel in the benchmark antitrust litigation on behalf of a putative class of gold and gold derivative traders, including futures and options on gold); *In re Cattle Antitrust Litig.*, No. 19 Civ. 1222 (D. Minn.) (serving on the executive committee as class counsel in the antitrust litigation on behalf of putative classes of cattle producers and live cattle futures and options traders); *Anastasio, et al. v. Total Gas & Power North America, Inc.*, et al., No. 15 Civ. 9689 (S.D.N.Y.) (Kirby and Radice firms both had active roles in motion to dismiss briefing and appellate briefing in case alleging that Total Gas' traders made manipulative trades at thinly-traded regional hubs in order to move the prices of derivative instruments whose values were tied to the price at those hubs).

Finally, through their extensive, multi-decade experience prosecuting complex antitrust class actions, the Kirby and Radice firms have developed significant relationships with industry experts, economists, sophisticated market participants, regulatory personnel, and settlement administration experts. Thus, appointing the Kirby/Radice Team as Interim Lead Counsel gives the class a significant knowledge advantage that facilitates the successful prosecution of this class action.

Accordingly, Kirby and Radice are not only the most proper counsel to be appointed as Interim Lead Counsel under the mandatory criteria of Rule 23(g)(1)(A), but under the discretionary criteria the Court may consider, as well.

## CONCLUSION

For the foregoing reasons, the Plaintiffs respectfully request that the Court appoint Kirby and Radice as Interim Co-Lead Counsel.

Dated: January 13, 2020

**KIRBY MCINERNEY LLP**

*/s/ Karen M. Lerner*
Karen M. Lerner
David E. Kovel
Thomas W. Elrod
Anthony E. Maneiro
250 Park Avenue, Suite 820
New York, New York 10177
Telephone: (212) 371-6600
Email: klerner@kmllp.com
dkovel@kmllp.com
telrod@kmllp.com
amaneiro@kmllp.com

**RADICE LAW FIRM, P.C.**

*/s/ John Radice*
John Radice
April Lambert
Natasha Fernandez-Silber
475 Wall Street
Princeton, New Jersey 08540
Telephone: (646) 245-8502
E-mail: jradice@radicelawfirm.com
alambert@radicelawfirm.com
nsilber@radicelawfirm.com

*Counsel for Plaintiffs Eric Young, Adam Kurtz, and David Crystal*